UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MINERVA D. YABA,

    Plaintiff,

v.

STRATOSPHERE GAMING, LLC,

    Defendant.

Case No. 2:09-CV-00450-KJD-GWF

**ORDER**

    Presently before the Court is Defendant's Motion for Summary Judgment (#26). Plaintiff filed a response in opposition (#31) to which Defendant replied (#34).

I.  Facts

    Plaintiff, Minerva Yaba, was hired as a dealer by Defendant in June 2006. On February 16, 2007, Yaba submitted a written complaint to one of her managers, Ray Pingree, alleging sexual harassment by Floorperson, Tom Rogers. Yaba alleged that Rogers swore, moved his arms in a manner that would cause his hands to touch her buttocks, and that on February 14, 2007, in a hallway, Rogers exposed himself to her by unzipping his pants "and inserting his hand in and out of his zipper area [making] sexual movements with his groin."

    Pingree referred Plaintiff's complaint to his superior and the matter was referred to Human Rescources. Fred Houghland, Corporate Vice-President of Human Resources, counseled Rogers

about swearing.  However, after reviewing surveillance tapes, Houghland only determined that, at worst, Rogers tucked in his shirt as he walked past Plaintiff.  Houghland informed Plaintiff of his determination that the incident had not happened as described on February 28, 2007.  As a precaution, Houghland instructed casino management to try to minimize contact between Rogers and Yaba.

On March 18, 2007, Yaba again submitted a written complaint to Human Resources asserting that Rogers had again sexually harassed her on February 23, February 28, and March 10, 2007.  However, no surveillance tapes were available, because they are recycled every seven days.  On May 10, 2007, Yaba again complained that Rogers had touched her buttocks at approximately 1:20 a.m. that day.  Houghland requested security review surveillance tapes of that day from the gaming floor.  The tapes revealed that from 12:58 a.m. to 1:21, Yaba was on a break.  From 1:21 to 2:00 a.m., Yaba worked as a dealer on the floor, but no physicaal contact between her and any employee occurred during that time.

On September 24, 2007, Yaba submitted another letter to Human Resources complaining that another Floorman, Tony Zigo, was harassing her.  Specifically, Yaba complained that Zigo "kept making sexual innuendo with his eyes" and "kept positioning himself to walk behind her[.]"  Yaba alleges that Zigo would position the Floorperson's podium or the pit's trashcan in such a way that he would be forced to walk close to her and brush his hand against her buttocks.  She also alleges that he would appear to hold the door open for her, but as she passed through he would narrow the door so that their bodies would touch.  Again, Houghland reviewed tapes, but there was nothing observed from the video available that could be construed as sexual harassment.  However, the tapes were only reviewed for one of the many days that she complained about.

Yaba's supervisor, Mike Mascolino, independently decided to keep Yaba and Zigo working in different areas.  On several occasions, Yaba was asked to end her shift early so that she would not be put in the same area as Zigo.  On October 23, 2007,Yaba again complained to the Director of Human Resources.  Yaba complained about being asked to leave early to avoid working with Zigo.

Specifically, Yaba mentioned that she believed that she was being treated differently than Zigo who was not asked to end his shifts early. After receiving Yaba's complaint, Houghland told Mascolino to stop separating Yaba and Zigo. When Mascolino reminded Houghland that "[t]here's going to be a problem", Houghland gave him "a direct order" to put Yaba in the same pit as Zigo.

On October 27, 2007, upon learning that she was scheduled to work in Zigo's area, Yaba wanted to work with a different supervisor. Yaba was ordered by her supervisor, Mike Mascolino, to go to her assigned area and did not do so. Yaba did not believe that she refused to go to her assigned area, but other employees assert that she refused to obey the order. Yaba was suspended, pending an investigation, and was finally terminated November 13, 2007.

Plaintiff filed her Amended Complaint on June 4, 2009, asserting claims for gender discrimination, hostile work environment and retaliation. Defendant has now moved for summary judgment on all of Plaintiff's claims. In response, Plaintiff has not opposed Defendant's motion based on conduct that occurred early in 2007. However, Plaintiff still asserts claims based on the conduct occurring in September, October and November 2007. Further, it appears that Plaintiff is only asserting claims for a hostile work environment and retaliation. All other claims are dismissed.

II.  Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere

allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy. O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248.

III.  Analysis

  A. Hostile Work Environment

Title VII of the 1964 Civil Rights Act prohibits discrimination on the basis of sex, which includes sexual harassment in the form of a hostile work environment. 42 U.S.C. § 2000e-2(a)(1); Meritor Sav. Bank, FSB, v. Vinson, 477 U.S. 57 (1986). To survive summary judgment, the respondent must submit cognizable evidence sufficient to establish a jury question on whether the victim (1) was subjected to verbal or physical conduct of a sexual nature, (2) that was unwelcome; and (3) that was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. See E.E.O.C. v. Prospect Airport Servs., Inc., 621 F.3d 991, 997 (9th Cir. 2010)(citing Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995)). The

4

respondent must present sufficient evidence for a jury question on whether the work environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile and one that the victim in fact did perceive to be so." Id. (quoting Nichols v. Azteca Restaurant Enterprises, Inc., 256 F.3d 864, 871-72 (9th Cir. 2001).

In this action, it is unquestioned that the conduct alleged to have been done by Zigo was unwelcome. Though Defendant disputes whether the conduct was severe or pervasive enough to alter the terms and conditions of Plaintiff's employment, Plaintiff has raised genuine issues of fact that must be resolved by a fact finder. Whether a working environment is objectively "abusive" "can be determined only by looking at all the circumstances," which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.... [N]o single factor is required." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). The "severe or pervasive" element has both objective and subjective components. Prospect Airport, 621 F.3d at 999. The Court considers not only the feelings of the actual victim, but also "assume the perspective of the reasonable victim." Id. (quoting Brooks v. City of San Mateo, 229 F.3d 917, 924 (9th Cir. 2000)). There is a subjective requirement as well as an objective requirement, because "if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment." Harris, 510 U.S. at 21-22. Here, it is undisputed that Plaintiff subjectively perceived the environment to be abusive.

To be actionable, the conduct must go beyond the "merely offensive" so that it changes the terms and conditions of the victim's job. See Prospect Airport, 621 F.3d at 999. Because a "sexual harassment case" is against the employer, not the harasser, and "only the employer can change the terms and conditions of employment, an isolated incident of harassment by a coworker will rarely (if ever) give rise to a reasonable fear that sexual harassment has become a permanent feature of the employment relationship." Brooks, 229 F.3d at 924. The Court weighs both severity and pervasiveness to evaluate whether a reasonable victim would think that sexual harassment had

become a permanent feature of the employment relationship. Prospect Airport, 621 F.3d at 999. And because only an employer can change the terms and conditions of employment, that will rarely if ever be the case, if the employer takes appropriate corrective action upon finding out about the harassment. Id. In this case, the Court finds that if a reasonable person believes Plaintiff's testimony, they could readily conclude that the alleged conduct was severe and pervasive enough to alter the terms and conditions of Plaintiff's employment.

### B. Retaliation

To establish a *prima facie* case for retaliation, Plaintiff must show that (1) she engaged in a protected activity under Title VII; (2) her employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. See Porter, 419 at 894. When a plaintiff has asserted a *prima facie* retaliation claim, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for its decision. See id. If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive. See id. It is clear, looking at the facts in a light most favorable to non-movant, that Plaintiff has raised genuine issues of fact on part of her claim. She complained of her harassment and was allegedly terminated from conduct resulting directly from her complaint. Therefore, the Court must deny Defendant's motion.

### IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (#26) is **DENIED**.

DATED this 29th day of March 2011.

_____
Kent J. Dawson
United States District Judge